IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RENEE RABACHE,

        Plaintiff,

vs.                                           1:18-cv-00847-LF

ANDREW M. SAUL,[1] Commissioner
of the Social Security Administration,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER comes before the Court on plaintiff Renee Rabache's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum (Doc. 23), which was fully briefed on August 1, 2019. *See* Docs. 25, 26, 27. The parties consented to my entering final judgment in this case. Doc. 9. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") applied the correct legal standards and his decision is supported by substantial evidence. I therefore DENY Ms. Rabache's motion and AFFIRM the Commissioner's decision.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED R. CIV. P. 25(d).

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the

claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.  Background and Procedural History

Ms. Rabache is a 56-year-old woman, who completed three years of college and who lives by herself in Santa Fe, New Mexico. AR 33, 66, 162, 188, 191, 202, 212, 222, 261, 264.[3] Ms. Rabache worked as a digital effects artist and a visual effects artist from 1989[4] through 2000. AR 34–36, 193. Ms. Rabache filed an application for Disability Insurance Benefits ("DIB") on December 15, 2014, alleging disability since November 1, 2005, due to chronic fatigue immune deficiencies, meningeo encephalopathy, chronic migraines and orthostatic intolerance. AR 33, 66, 77, 161–62, 192. The Social Security Administration ("SSA") denied

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 15-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[4] At the hearing, the ALJ stated that Ms. Rabache's earnings records showed her working as a visual effects artist from 1987 to 2000. AR 34. Ms. Rabache's Disability Report shows her working as a visual effects artist beginning in 1989. AR 193. The difference in dates does not have an impact on this case.

her claim initially and on reconsideration.  AR 65–84, 90–96.  Ms. Rabache requested a hearing

before an ALJ.  AR 98–101 (duplicate copies).  On March 15, 2017, ALJ Cole Gerstner held a

hearing.  AR 27–55.  ALJ Gerstner issued his unfavorable decision on June 26, 2017.  AR 10–

23.

The ALJ found that Ms. Rabache met the insured status requirements of the Social

Security Act through December 31, 2005.  AR 15.  At step one, the ALJ found that Ms. Rabache

had not engaged in substantial, gainful activity "during the period from her alleged onset date of

November 1, 2005, through her date last insured of December 31, 2005."  *Id*.  At step two, the

ALJ found that Ms. Rabache "did not have an impairment or combination of impairments that

significantly limited the ability to perform basic work-related activities for 12 consecutive

months."  *Id*.  The ALJ therefore found that Ms. Rabache did not have a severe impairment or

combination of impairments, and he denied her claim at step two.  AR 15, 19.

Ms. Rabache requested that the Appeals Council review the ALJ's unfavorable decision.

AR 155–60.  On July 23, 2018, the Appeals Council denied the request for review.  AR 1–6.

Ms. Rabache timely filed her appeal to this Court on September 10, 2018.  Doc. 1.[5]

## IV.    Ms. Rabache's Claims

Ms. Rabache raises two main arguments and several sub-arguments for reversing and

remanding this case.  First, Ms. Rabache contends that the ALJ did not have the authority to act

because he was not properly appointed under the Constitution's Appointments Clause at the time

of the hearing, pursuant to *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018).  Doc. 23 at 1, 5.  Second, Ms.

Rabache contends that the ALJ committed legal error in determining that she did not have any

---

[5] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the
decision is mailed.  20 C.F.R. § 404.981; *see also* AR 3.

severe impairments during the relevant time period.  *Id*. at 1, 5–16.  In arguing that the ALJ erred in finding that she did not have a severe impairment, Ms. Rabache contends that the ALJ failed to properly analyze the treating doctor evidence, and therefore the step two finding was not supported by substantial evidence.  *Id*. at 6–13.  She further contends that the ALJ erred by failing to develop the record with regard to Dr. Reddish's opinion.  *Id*. at 13.  Finally, Ms. Rabache contends that the ALJ failed to properly assess her symptoms pursuant to Social Security Ruling ("SSR") 96-3P.[6]  *Id*. at 14.  Ms. Rabache's claims are without merit.

**V.    Analysis**

    A.    Ms. Rabache Has Waived Her Challenge to the Constitutional Validity of the Appointment of the ALJ.

Citing *Lucia*, Ms. Rabache contends that at the time of the hearing, the ALJ was not properly appointed under the Constitution's Appointments Clause, and therefore did not have legal authority over this case.  Doc. 23 at 5.  The Commissioner does not dispute that the ALJ had not been properly appointed under the Appointments Clause at the time of the hearing.  *See* Doc. 25 at 7–18.  The Commissioner contends, however, that Ms. Rabache has waived this argument because she did not timely raise it before the ALJ or the Appeals Council.  Doc. 25 at 7–18.  I agree with the Commissioner.

"The Appointments Clause prescribes the exclusive means of appointing 'Officers.' Only the President, a court of law, or a head of department can do so."  *Lucia*, 138 S. Ct. at 2051. If an ALJ is not considered to be a constitutional officer, then the "Appointments Clause cares

---

[6] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs because they constitute the agency's interpretation of its own regulations and foundational statutes.  *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

not a whit about who named them." *Id.* (*quoting United States v. Germaine*, 99 U.S. 508, 510

(1879)).[7]  In *Lucia*, the Supreme Court held that Securities and Exchange Commission ("SEC")

ALJs are "inferior officers" that must be appointed pursuant to the Appointments Clause of the

United States Constitution.  *See Lucia*, 138 S. Ct. at 2051–56.  In so holding, the Court briefly

discussed challenges made to ALJ appointments under the Appointments Clause.  *See id.* at

2055.  It said:

> [O]ne who makes a timely challenge to the constitutional validity of the
> appointment of an officer who adjudicates his case is entitled to relief. Lucia
> made just such a timely challenge:  He contested the validity of Judge Elliot's
> appointment before the Commission, and continued pressing that claim in the
> Court of Appeals and this Court.

*Id.* (internal citations and quotations omitted).

In applying *Lucia*, courts have struggled to interpret what constitutes a "timely

challenge" during SSA proceedings.  The majority of courts who have addressed the timeliness

issue have interpreted an Appointments Clause challenge to an SSA ALJ to be "timely" if raised

at some point during the administrative process.  *See Marchant on behalf of A.A.H. v. Berryhill*,

No. CV 18-0345, 2019 WL 2268982, at *3 (E.D. Pa. May 28, 2019) (collecting cases).[9]  Most

courts point to the fact that the plaintiff in *Lucia* raised his Appointments Clause challenge for

the first time before the SEC appeals council; thus, to be considered "timely," the challenge must

be raised during the administrative process.  *Id.*

---

[7] Whether SSA ALJs are inferior officers, subject to the Appointments Clause, is not before me
in this case.  The Commissioner concedes that *Lucia* applies to SSA ALJs and notes that the
appointments of SSA ALJs were appropriately ratified on July 16, 2018, following the Supreme
Court's decision in *Lucia*.  Doc. 25 at 8, n.5.

[9] Though *Lucia* ostensibly concerns only SEC ALJs, courts and federal agencies have applied its
reasoning across the board.  *See Marchant*, 2019 WL 2268982, at *2 (collecting cases).
Although *Marchant* is not binding on this Court, the opinion is thorough, and the reasoning is
persuasive.

There is a split among the district courts in the Tenth Circuit on the question of whether a claimant has waived his or her Appointments Clause claim if it is not raised during the administrative process. *See Pearson v. Berryhill*, No. 17-4031-SAC, 2018 WL 6436092 (D. Kan. Dec. 7, 2018) (holding plaintiff did not make a timely challenge to the constitutional validity of the appointment of the ALJ); *Heather M.H. v. Berryhill*, No. 2:16-CV-1056 JNP/BCW, 2019 WL 2305951 (D. Utah Apr. 29, 2019) (holding that in the Tenth Circuit, social security applicants were put on notice regarding the suspect appointment of ALJs before the Supreme Court's decision in *Lucia*), *report and recommendation adopted*, No. 2:16-CV-1056 JNP/BCW, 2019 WL 2297706 (D. Utah May 30, 2019); *Klotz v. Saul*, No. 2:17-CV-453 RJS/CMR, 2019 WL 4119159 (D. Utah Aug. 12, 2019) (holding that even if the court granted the plaintiff's request to reopen the case, plaintiff waived the Appointments Clause arguments by failing to timely make them and has provided no excuse for the failure), *report and recommendation adopted*, No. 2:17-CV-453 RJS/CMR, 2019 WL 4110498 (D. Utah Aug. 29, 2019); *but see Kim L. M. v. Saul*, No. 18-CV-418-FHM, 2019 WL 3318112 (N.D. Okla. July 24, 2019) (finding that plaintiff did not forfeit the Appointments Clause claim by failing to raise that issue before the SSA). I agree with the majority of courts that find a claimant waives his or her Appointments Clause challenge if it is not raised during the administrative process.

A plain language reading of *Lucia* provides that a challenge at some point during the administrative process is sufficient to raise a timely claim. *See Lucia*, 138 S. Ct. at 2055 ("Lucia made just such a timely challenge: He contested the validity of Judge Elliot's appointment before the Commission . . . ."). According to SSA regulations, a claimant must raise objections concerning the presiding ALJ "at [the] earliest opportunity." 20 C.F.R. § 404.940. Therefore, I find that the "earliest opportunity" to raise an Appointments Clause challenge is at the

administrative level—before the ALJ or the Appeals Council, and the claim must be made sometime during the administrative process to be considered timely. Ms. Rabache did not raise her Appointments Clause challenge during any phase of the administrative process. Accordingly, her Appointments Clause challenge in this Court is untimely, and therefore waived.

Ms. Rabache makes two arguments in favor of her Appointments Clause challenge. First, she argues that she could not have raised the challenge below because *Lucia* was decided on June 21, 2018, after the date of the hearing before the ALJ on March 15, 2017, and after the ALJ's decision on June 21, 2017. Doc. 26, at 2. Second, relying on *Sims v. Apfel*, 530 U.S. 103 (2000), Ms. Rabache contends that there is no issue exhaustion requirement at the Appeals Council and, accordingly, her Appointments Clause challenge has not been waived. These arguments are not persuasive.

Ms. Rabache is correct that *Lucia* was decided after both her hearing before the ALJ and her request for review before the Appeals Council.[10] There was law in place, however, that put her on notice that she was required to raise her Appointments Clause challenge during the administrative process to preserve the issue for review by this Court.

First, in *United States v. L. A. Tucker Truck Lines, Inc*., 344 U.S. 33 (1952), the Supreme Court held that the challenge to the appointment of an administrative adjudicator must be made at the administrative level. In *L. A. Tucker*, the Interstate Commerce Commission issued a certificate to a "one Cunningham" to extend his existing motor carrier route. 344 U.S. at 34.

---

[10] *Lucia* was decided a month prior to the Appeals Council's denial of review of Ms. Rabache's claim. *Compare Lucia*, 138 S. Ct. at 2044 (decided June 21, 2018), *with* AR 1–6 (Appeals Council denial dated July 23, 2018). Neither Ms. Rabache nor the Commissioner argue whether Ms. Rabache should have raised her Appointments Clause challenge in the month between the *Lucia* decision and the Appeals Council's decision. The Court, therefore, will not address this particular issue.

L.A. Tucker Truck Lines ("L.A. Tucker") opposed the issuance of the certificate and sought

reconsideration from the full Commission, which was denied. *Id.* L.A. Tucker petitioned the

district court to set aside the certificate. *Id.* On the day set for hearing, L.A. Tucker raised, for

the first time, the argument that "the Commissioner's action was invalid for want of jurisdiction

because the examiner had not been appointed pursuant to § 11 of the Administrative Procedure

Act." *Id.* at 35. The district court allowed the argument and determined that the appointment

had not been in accordance with the Act, and it invalidated the certificate without addressing the

merits. *Id.* The United States and the Interstate Commerce Commission appealed to the

Supreme Court, raising the question "whether such an objection, first made at that stage of the

proceedings, was not erroneously entertained." *Id.* The Supreme Court held that it was. *Id.*

> The Supreme Court explained that

>> orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts.

*Id.* at 37. In addition,

>> Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.

*Id.* The Supreme Court therefore held that

>> the defect in the examiner's appointment was an irregularity which would invalidate a resulting order if the Commission had overruled an appropriate objection made during the hearings. But it is not one which deprives the Commission of power or jurisdiction, so that even in the absence of a timely objection its order should be set aside as a nullity.

*Id.* at 38. The Supreme Court reversed and remanded the case to the district court for a

determination on the merits.[11]

Second, in *Bandimere v. Sec. & Exch. Comm'n*, 844 F.3d 1168 (10th Cir. 2016), the

Tenth Circuit held that SEC ALJs were "inferior officers" that must be appointed under the

Appointments Clause. In *Bandimere*, the SEC brought an administrative action against Mr.

Bandimere alleging he violated various securities laws. 844 F.3d at 1171. An SEC ALJ

presided over a trial-like hearing, and the ALJ's initial decision concluded Mr. Bandimere was

liable. *Id.* The ALJ, therefore, imposed a number of penalties. *Id.* The SEC reviewed the

decision and reached a similar result. "During the SEC's review, the agency addressed Mr.

Bandimere's argument that the ALJ was an inferior officer who had not been appointed under

the Appointments Clause." *Id.* The SEC conceded that the ALJ had not been constitutionally

appointed, but argued that the ALJ was not an inferior officer. *Id.* The Tenth Circuit found that

SEC ALJs are inferior officers who must be appointed in conformity with the Appointments

Clause. *Id.* at 1179–81. The Tenth Circuit did not address the issue of whether the objection

under the Appointments Claus was timely because Mr. Bandimere raised the Appointments

Clause challenge during the SEC's review.

Under *L. A. Tucker,* an objection to the appointment of an administrative hearing officer's

authority to preside over an administrative hearing must be raised at the administrative level. As

the *L. A. Tucker* decision was issued in 1952, the law was in place well before Ms. Rabache's

---

[11] The Tenth Circuit also recently held in an unpublished opinion that an Appointments Clause challenge must be raised at the administrative level. *See Turner Bros., Inc. v. Conley*, 757 F. App'x 697, 699–700 (10th Cir. 2018) (unpublished). The Tenth Circuit further noted that "Appointments Clause challenges are nonjurisdictional and may be waived or forfeited." *Id.* at 700. *Turner Bros.* thus reinforces the holding in *L.A. Tucker* that an objection to the administrative hearing officer's authority must be made at the administrative level to preserve the issue for review.

application and hearing before the SSA. Under *Bandimere*, the Tenth Circuit determined that ALJs are inferior officers who must be appointed pursuant to the Appointments Clause. The *Lucia* decision did not change the Tenth Circuit's holding in *Bandimere*. Instead, *Lucia* reinforced the Tenth Circuit's decision.[12] The Tenth Circuit decided *Bandimere* on December 27, 2016, prior to Ms. Rabache's hearing before the ALJ on March 15, 2017. Accordingly, *L. A. Tucker* and *Bandimere* together put Ms. Rabache on notice that she was required to raise her Appointments Clause challenge during the administrative process. Because Ms. Rabache failed to raise her Appointments Clause challenge during the administrative process, she has waived that issue on appeal to this Court.

Citing *Sims v. Apfel*, 530 U.S. 103 (2000), Ms. Rabache contends that she was not required to raise her Appointments Clause challenge before the ALJ because there is no issue exhaustion requirement in Social Security cases. Doc. 26 at 3. In *Sims*, the Court addressed the question of whether a claimant seeking judicial review of a denied Social Security claim waives any issue the claimant failed to include in a request for review before the Appeals Council. The Court rejected an issue exhaustion requirement, noting that exhaustion was not required by the SSA regulations, and that applying such a rule to SSA proceedings "makes little sense." *Sims*, 530 U.S. at 108, 112 (internal citation omitted). Importantly, however, the *Sims* Court expressly stated that "[w]hether a claimant must exhaust issues before the ALJ [as opposed to the Appeals

---

[12] In *Lucia*, the Supreme Court confronted the same issue the Tenth Circuit addressed in *Bandimere* as to whether ALJs were "Officers of the United States" subject to the Appointments Clause, or mere employees. *Lucia*, 138 S. Ct. at 2051. The Supreme Court explicitly noted that the Tenth Circuit's decision in *Bandimere* conflicted with a decision of the D.C. Circuit, and that Lucia sought review by the Supreme Court to resolve this circuit split. *Id.* at 2050. The Court ultimately held that the appointment of the ALJ who presided over Lucia's case did not comply with the Appointments Clause, and the Court ordered a new hearing before a properly appointed official. *Id.* at 2055.

Council] is not before us." *Id.* at 107. In other words, the Court specifically did not address whether a claimant could raise an issue on appeal to the district court that was not raised in any way during the administrative process. *See id.* Thus, the decision in *Sims* does not control the decision here.

The key in deciding this issue is the language of the *Lucia* decision itself. In *Lucia*, the Supreme Court emphasized that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Lucia*, 138 S. Ct. at 2055 (internal citation and quotations omitted). "Lucia made just such a timely challenge: He contested the validity of the ALJ's appointment before the Commission, and continued pressing that claim in the Court of Appeals and this Court." *Id.* Unlike the plaintiff in *Lucia*, Ms. Rabache never raised the Appointments Clause issue before either the ALJ or the Appeals Council, which is fatal to her claim.[14] Remand is not warranted pursuant to *Lucia*.

B.    The ALJ Did Not Commit Legal Error at Step Two.

At step two, the agency determines whether the claimant's alleged impairment or combination of impairments is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). "A claimant's impairment or combination of impairments is 'severe' if it 'significantly limits [his or her] physical or mental ability to do basic work activities.'" *Allman v. Colvin*, 813 F.3d 1326, 1330

---

[14] Furthermore, in *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 15 (2000), the Supreme Court reiterated that 42 U.S.C. § 405(g) contains the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in the court. Consistent with the Supreme Court's decisions in *Shalala* and *Sims*, other courts that have addressed this issue have held that *Sims* is not applicable when the claimant has failed to raise his or her claim before either the ALJ or the Appeals Council. *See, e.g., Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017); *Stearns v. Berryhill*, 2018 WL 4380984, at *4–5 (N.D. Iowa, Sept. 14, 2018); *Davis v. Commissioner of Social Security*, 2018 WL 4300505, at *8–9 (N.D. Iowa, Sept. 10, 2018); *see also Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (finding the claimant waived the issue of his obesity as an impairment because he never alleged any limitation as a result of his obesity in his application for benefits or during the hearing).

(10th Cir. 2016) (quoting 20 C.F.R. § 404.1520(c)). The ALJ must determine "whether medical evidence establishes an impairment or combination of impairments 'of such severity' as to be the basis of a finding of inability to engage in any [substantial gainful activity]." SSR 85-28, 1985 WL 56856, at *3 (1985). The determination of severity at step two is designed to screen out only those claimants with "impairments of a minimal nature which could never prevent a person from working." *Id.* at *2 (internal citation and quotation omitted). Step two is designed "to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Bowen*, 482 U.S. at 156 (O'Connor, J., concurring). "If you do not have a severe medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . ., we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii).

It is beyond dispute that the claimant bears the burden of proving disability in a social security case. *Hawkins v. Chater*, 113, F.3d 1162, 1164 (10th Cir. 1997). While a claimant must make only a de minimis showing to advance beyond step two, *Langley*, 373 F.3d at 1123, he or she "must show more than the mere presence of a condition or ailment," *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). The determination of whether an impairment is severe at step two "is based on medical factors alone, and does not include consideration of such vocational factors as age, education, and work experience." *Langley*, 373 F.3d at 1123 (internal citation and quotation omitted). At step two, "medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28, 1985 WL 56856, at *4. Basic work activities include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision,

coworkers, and usual work situations; and dealing with changes in a routine work setting." *Id.* at

*3; *see also Langley*, 373 F.3d at 1123.

The ALJ may make a finding of non-severity at step two only when the medical evidence

establishes a slight abnormality or a combination of slight abnormalities which would have no

more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352. SSR

85-28 requires that the evidence "clearly establish[]" that the impairment is not severe. The

ruling reads, in pertinent part:

> A claim may be denied at step two only if the evidence shows that the
> individual's impairments, when considered in combination, are **not** medically
> severe, i.e., do not have more than a minimal effect on the person's physical or
> mental ability(ies) to perform basic work activities. If such a finding is not
> **clearly established** by medical evidence, however, adjudication must continue
> through the sequential evaluation process.

SSR 85-28, 1985 WL 56856, at *3 (emphasis added). "Great care should be exercised in

applying the not severe impairment concept. If an adjudicator is unable to determine clearly the

effect of an impairment or combination of impairments on the individual's ability to do basic

work activities, the sequential evaluation process should not end with the not severe evaluation

step. Rather, it should be continued." *Id.* at *4.

It is important to note the limited relevant time period at issue in this case. The relevant

time period for determining disability status is from the onset date though the date the claimant is

last insured for disability benefits. *Hendron v. Colvin*, 767 F.3d 951, 953 (10th Cir. 2014); *Hill*

*v. Astrue*, 289 F. App'x 289, 291 (10th Cir. 2008). The ALJ found that Ms. Rabache's onset date

was November 1, 2005, and her date last insured was December 31, 2005. AR 15; *see also* AR

66-67, 69, 74, 77, 161, 188, 261. Accordingly, in order to receive benefits, Ms. Rabache was

required to establish that she had a severe impairment within that two-month period.

Ms. Rabache failed to meet her de minimis burden that she had a severe impairment during the relevant time period. While the record contains medical evidence from 2003 through 2017, the ALJ determined that the only impairments established by Ms. Rabache's medical records during the relevant time period were giardia and urinary tract infections.[15] AR 15, 17. The ALJ noted that Dr. Dean gave Ms. Rabache medication for the giardia in December of 2005.[16] AR 17. In a follow up visit in February 2006, Ms. Rabache reported that the medication was "fantastic" and she "felt results almost immediately." AR 17, 365. The ALJ also noted that Ms. Rabache did not make any further complaints of urinary tract infections. AR 17. The ALJ concluded that "the evidence does not support the contention that giardia or urinary tract infections caused more than minimal limitation in the ability to perform basic work activities prior the date last insured." *Id.* In other words, the medical evidence clearly established that Ms. Rabache did not have a severe impairment during the relevant time period. The ALJ addressed Ms. Rabache's alleged chronic fatigue syndrome and migraine headaches and found that there was no medical evidence that supported a determination that Ms. Rabache suffered from the medically determinable impairments[17] of either chronic fatigue syndrome or migraine headaches

---

[15] The hand-written notes of Dr. Dean dated October 2004 through February 2006 do not indicate a urinary tract infection ("UTI"). Rather, Dr. Dean's notes state that Ms. Rabache suffers from a "URI," which indicates an upper respiratory infection, not a urinary tract infection. AR 365–67. Neither Ms. Rabache nor the Commissioner takes issue with this misstatement of the facts. Whether Ms. Rabache suffered from a "UTI" or a "URI" does not change the result.

[16] The ALJ mistakenly referred to this visit as from December 2015, but the cited note is from December 2005. AR 17, 366. The Court finds Ms. Rabache's argument that the Commissioner is making a *post hoc* argument unpersuasive. *See* Doc. 26 at 5–6.

[17] A medically determinable physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. The impairment must be established by objective medical evidence (signs, laboratory findings, or both) from an acceptable medical source, not only by an individual's statement of symptoms. 20 C.F.R. § 416.908 (effective for claims filed through March 26, 2017).

during the relevant two-month time period. AR 17. Ms. Rabache does not specifically dispute these findings.

Ms. Rabache contends that the ALJ committed a legal error at step two by adopting the opinions of the non-examining agency doctors, "finding that 'there was insufficient evidence to determine the severity of the claimant's impairments prior to the date last insured.'" Doc. 23 at 5 (citing AR 17). Ms. Rabache argues that the ALJ's finding of "insufficient evidence" was contrary to SSR 85-28. *Id*. at 6. Ms. Rabache's argument is based on a misperception of the ALJ's findings at step two.

SSR 85-28 requires more than a finding that the evidence is "insufficient" to determine that an impairment is severe at step two. It requires that the evidence "clearly establish[]" that the impairment is not severe. SSR 85-28, 1985 WL 56856, at *3. An ALJ errs at step two if he or she finds there is insufficient evidence to determine the severity the claimant's impairments. *See Gonzales v. Berryhill*, No. CV 17-0601 KBM, 2018 WL 4688312, at *6 (D.N.M. Sept. 28, 2018) ("The Court agrees that a Step-Two determination of no severe impairment requires more than a finding of insufficiency of evidence.") (citing *Chavez v. Colvin*, No. 14-cv-0453 SMV, 2015 WL 13662583, at *3 (D.N.M. May 15, 2015)). That is not, however, what the ALJ found in this case.

The ALJ gave great weight to the assessments of the state agency medical consultants "who opined that there was insufficient evidence to determine the severity of the claimant's impairments prior to the date last insured." AR 17. The ALJ, however, did not specifically adopt the state agency opinions as his findings. Instead, the ALJ found that the evidence from the relevant time period clearly established that Ms. Rabache's impairments, when considered in combination, did not have more than a minimal effect on her physical or mental abilities to

perform basic work activities. *Id.* Specifically, the ALJ found that "the evidence does not support the contention that giardia or urinary tract infections caused more than minimal limitations in the ability to perform basic work activates prior to the date last insured." *Id.* Ms. Rabache responded well to the medication for giardia and did not seek further medical care for urinary tract infections. *Id.* He further found that "there is no evidence that the claimant has a medically determinable impairment of chronic fatigue syndrome during the relevant period." *Id.* With regard to Ms. Rabache's migraine headaches, the ALJ found "there is likewise no evidence to support the existence of a medically determinable impairment during the relevant period." *Id.* The ALJ, therefore, did not rely on "insufficient evidence," but instead relied on the available evidence which showed that Ms. Rabache's impairments, when considered in combination, did not have more than a minimal effect on her physical or mental ability to perform basic work activities. Ms. Rabache did not meet her de minimis burden of establishing that she had a severe impairment during the relevant time period. The ALJ did not commit a legal error at step two.

C. The ALJ's Step Two Finding is Supported by Substantial Evidence.

Ms. Rabache contends that the ALJ's failure to properly analyze the treating physician evidence renders the step two finding unsupported by substantial evidence. Doc. 23 at 6–13. I disagree.

In analyzing a treating source opinion, the ALJ first must determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). In doing so, the ALJ must perform a two-step process. First, the ALJ must consider whether the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2); *Watkins,* 350 F.3d at 1300). If

the opinion meets both criteria, the ALJ must give the treating source's opinion controlling weight. *Id.* To give anything less than controlling weight, the ALJ must demonstrate with substantial evidence that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not assign a treating source's opinion controlling weight, step two of the analysis requires the ALJ to apply the six factors listed in the regulations to determine whether a treating source's opinion should be rejected altogether or assigned some lesser weight. These factors include:

1. **Examining relationship**: more weight is given to the opinion of a source who has examined the claimant than to one who has not;
2. **Treatment relationship**: more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the opinion of a source who has treated the claimant for a long time over several visits and who has extensive knowledge about the claimant's impairment(s);
3. **Supportability:** more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;
4. **Consistency:** the more consistent the opinion is with the record as a whole, the more weight it should be given;
5. **Specialization**: more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and
6. **Other factors:** any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. § 404.1527(c)(1)–(6) (effective March 27, 2017); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Watkins*, 350 F.3d at 1301. As the first two factors make clear, even if an ALJ determines that a treating source opinion is not entitled to controlling

weight, the opinion still is entitled to deference. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)[18]; *see also Watkins* 350 F.3d at 1300.

The ALJ does not need to explicitly discuss all of the factors. *Oldham*, 509 F.3d at 1258. Nevertheless, "[u]nder the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating [source's] opinion." *Watkins*, 350 F.3d at 1300 (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96-2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003)). The reasons must be "tied to the factors specified in the cited regulations." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins*, 350 F.3d at 1300–01). And the reasons must be "supported by the evidence in the case record" and "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5.

### 1. *Dr. Dean*

Dr. Dean initially treated Ms. Rabache from 2003 through 2006. AR 365–67. In December of 2005, Dr. Dean diagnosed Ms. Rabache with giardiasis[19] and chronic fatigue syndrome. AR 366. After a February 2006 visit, Dr. Dean did not treat Ms. Rabache again until 2009. AR 365. Following one visit in 2009, Dr. Dean began treating Ms. Rabache more regularly from September of 2012 through January 2015. AR 358–65. In March of 2017, Dr. Dean provided Ms. Rabache with a letter opinion regarding her ability to perform work

---

[18] SSR 96-2p was rescinded for claims filed after March 27, 2017. *See* Federal Register Notice Vol. 82, No. 57, page 15263. Since Ms. Rabache filed her claim on December 15, 2014 (AR 33, 161-62), SSR 96-2p applies to her claims.

[19] Giardiasis is a diarrheal disease caused by the microscopic parasite Giardia. https://www.cdc.gov/parasites/giardia/general-info.html (last visited 11/14/2019).

activities.  AR 454–55.  There are no treatment records indicating that Dr. Dean treated Ms. Rabache after January of 2015.

The ALJ gave good reasons for giving the statements in Dr. Dean's March 2017 letter "little weight."  In his letter, Dr. Dean opined that Ms. Rabache has been "totally disabled from work, certainly since 2012."  AR 455.  He also inferred that she had been totally disabled "probably for several or more years prior to that."  *Id*.  The ALJ noted that Dr. Dean's statements were not supported by the record.  The ALJ explained that whether Ms. Rabache was "totally disabled" since 2012 does not establish her disability by the date last insured, December 31, 2005.[20]  AR 18.  The ALJ also pointed out that Dr. Dean admitted that because he did not see Ms. Rabache between 2005 and 2012, "any judgment on her health status during that time period by myself is somewhat speculative."  *Id*.  The ALJ acknowledged that Dr. Dean assumed that Ms. Rabache "likely had some degree of lead toxicity for some time before March 2012."  *Id*.  The ALJ explained, however, that "there was no medically determinable impairment of chronic fatigue syndrome, lead toxicity, or fibromyalgia during the relevant time period."  *Id*.  Further, the ALJ explained that Dr. Dean's statements were not consistent with the medical evidence during the relevant time period.  The ALJ noted that "the impairments that were indeed medically determinable at that time, namely giardia and urinary tract infection, did not produce more than minimal limitations in the ability to perform basic work activities during the relevant time period."  *Id*.

Ms. Rabache contends that the ALJ was wrong to reject Dr. Dean's opinions.  First, she criticizes the ALJ for rejecting the opinion that there was no medically determinable impairment

_____

[20] The ALJ, again, mistakenly states that disability must be established by "December 2015." AR 18.  This is a typographical error as Ms. Rabache's date last insured is December 2005.  AR 15.

of chronic fatigue syndrome, lead toxicity, or fibromyalgia during the relevant time period. Doc. 23 at 11. Ms. Rabache contends that because the ALJ found other medically determinable impairments, that "this was not a legitimate basis to reject Dr. Dean's opinion." *Id.* Ms. Rabache does not cite to any legal authority to support this contention and does not develop the argument further. Accordingly, the Court will not address this issue as it is not adequately briefed. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

Ms. Rabache further contends that the ALJ should not have rejected Dr. Dean's opinion because "there is no requirement that a specific diagnosis appear in the record, because a doctor may retroactively diagnose an impairment." Doc. 23 at 11 (citing *Potter v. Secretary of HHS*, 905 F.2d 1346, 1348–49 (10th Cir. 1990)). *Potter* does not support Ms. Rabache's contention. In *Potter*, the Tenth Circuit acknowledged that "[i]t is true that a treating physician may provide a retrospective diagnosis of a claimant's condition." *Potter*, 905 F.2d at 1348. "However, the relevant analysis is whether the claimant was actually *disabled* prior to the expiration of her insured status." *Id.* at 1348–49 (emphasis in original). The Tenth Circuit explained that "[a] retrospective diagnosis without evidence of actual disability is insufficient. This is especially true where the disease is progressive. Here, the medical reports from 1980–81 do not suggest the claimant was disabled." *Id.* at 1349. As in *Potter*, Dr. Dean's medical records between 2003 and 2006, AR 365–67, do not suggest that Ms. Rabache was disabled prior to December 31, 2005. The ALJ provided legitimate reasons for rejecting Dr. Dean's opinions.

### 2. *"Other" Opinions*

The ALJ acknowledged that "[t]he record includes several statements from various other treating sources regarding the nature and effects of claimant's impairments." AR 18. The ALJ considered the relevant factors and noted that "these providers did not have a treating

relationship with the claimant during the relevant time period and their statements are dated . . . more than nine years after the date last insured." *Id.*  The ALJ specifically addressed the treating source statements of Dr. Canfield and Dr. Ackerley, noting that there was no objective medical evidence that supported Ms. Rabache's subjective complaints or the doctor's statements. *Id.* The ALJ, therefore, gave the "other" medical opinions "little weight." *Id.*  The ALJ's reasons for rejecting theses opinions are tied to the relevant factors, and reversal is not warranted based on the weight the ALJ gave to Dr. Canfield and Dr. Ackerley's medical opinions.

Ms. Rabache criticizes the ALJ for rejecting the opinions "outright based on their timing."  Doc. 23 at 12.  She cites *Potter* and *Andersen v. Astrue*, 319 F. App'x 712 (10th Cir. 2009) (unpublished), for the proposition that an ALJ should not reject medical records that are dated after the relevant time period.  Doc. 23 at 12; Doc. 26 at 6.  *Potter* fails to assist her for the same reasons it fails to support Dr. Dean's opinion—"[a] retrospective diagnosis without evidence of actual disability is insufficient." *Potter,* 905 F.2d at 1349.  Here, there is no evidence of actual disability during the relevant time period.

In *Andersen*, the medical opinions that the ALJ assessed as "temporally distant and of little utility," were dated prior to the relevant time period, not after, as in this case.  *Andersen*, 319 F. App'x at 716–21 (Andersen's date last insured was December 31, 1998.  The disputed doctors' opinions were dated 1993, 1994, and 1997, prior to the date last insured).  The Tenth Circuit reasoned that "because Mr. Andersen's underlying medical condition was undisputed and permanent, the ALJ could make inferences about the progression of Mr. Andersen's impairment, relying on earlier medical evidence."  *Andersen*, 319 F. App'x at 722.

In this case, as the ALJ pointed out, the medical opinions of Drs. Canfield and Ackerley were made more than 9 years *after* December 31, 2005, Ms. Rabache's date last insured,[21] and neither doctor had a treating relationship with Ms. Rabache during the relevant time period. AR 18, 450–53. Dr. Canfield and Dr. Ackerley diagnosed Ms. Rabache with chronic fatigue syndrome. AR 450, 453. Dr. Dean previously had made that same diagnosis on December 27, 2005, without any evidence that it had more than a minimal impact on Ms. Rabache's ability to perform work activities. Consequently, the retroactive diagnoses by Drs. Canfield and Ackerley do not establish that Ms. Rabache was disabled prior to December 31, 2005. Further, the ALJ could not have inferred a severe impairment in 2005 from the opinions of Drs. Canfield and Ackerley more than nine years later.

### 3. *Dr. Reddish*

Dr. Reddish is a licensed naturopathic doctor who has known Ms. Rabache since 2003. AR 456. Dr. Reddish stated that in 2003, Ms. Rabache suffered from "extreme fatigue, hypoglycemia, severe bloating and GI pain and migraines. In 2004, I suggested she get tested for EBV . . . . She tested positive." AR 456. Dr. Reddish also observed that Ms. Rabache's "cognition started to become impaired" in 2004 to 2005. *Id*. The ALJ gave Dr. Reddish's opinion little weight noting that her statements are not supported by the overall evidence. AR 18. Indeed, there is no medical evidence indicating that Ms. Rabache had any of these impairments during the relevant time period.[22] And as discussed above, there is no objective

---

[21] The ALJ states that the statements are dated 2015 and 2016. Dr. Canfield's statement, however, is dated September 26, 2016 (AR 450), and Dr. Ackerley's statement is dated February 27, 2017 (AR 453).

[22] Although Dr. Dean diagnosed Ms. Rabache with "chronic fatigue" in 2005, AR 366, the ALJ explained that "there is no evidence that the claimant had a medically determinable impairment of chronic fatigue syndrome (CFS) during the relevant period."

medical evidence that Ms. Rabache's medical conditions caused more than a minimal effect on her ability to perform basic work activities.

The ALJ noted that "Dr. Reddish indicated that the claimant was tested positive for the Epstein Barr Virus (EBV) in 2004.[23] However, neither these laboratory results nor any treatment notes from Dr. Reddish are present in the record." AR 18. Ms. Rabache argues that the ALJ should not have discredited Dr. Reddish's opinion without obtaining the underlying medical records that were not present in the record. Doc. 23 at 13. She contends that the ALJ had a duty to obtain Dr. Reddish's missing records. I disagree.

"The burden to prove disability in a social security case is on the claimant." *Hawkins*, 113 F.3d at 1164. "Nevertheless, because a social security disability hearing is a nonadversarial proceeding, the ALJ is 'responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Madrid v. Barnhart*, 447 F.3d

---

[23] According to the Centers for Disease Control and Prevention (CDC),

> Epstein-Barr virus (EBV), also known as human herpesvirus 4, is a member of the herpes virus family. It is one of the most common human viruses. EBV is found all over the world. Most people get infected with EBV at some point in their lives. EBV spreads most commonly through bodily fluids, primarily saliva. EBV can cause infectious mononucleosis, also called mono, and other illnesses. . . . Many people become infected with EBV in childhood. EBV infections in children usually do not cause symptoms, or the symptoms are not distinguishable from other mild, brief childhood illnesses. People who get symptoms from EBV infection, usually teenagers or adults, get better in two to four weeks. However, some people may feel fatigued for several weeks or even months. After you get an EBV infection, the virus becomes latent (inactive) in your body. In some cases, the virus may reactivate. This does not always cause symptoms, but people with weakened immune systems are more likely to develop symptoms if EBV reactivates. . . . Diagnosing EBV infection can be challenging because the symptoms are similar to other illnesses. EBV infection can be confirmed with a blood test that detects antibodies. About nine out of ten of adults have antibodies that show that they have a current or past EBV infection.

*See* https://www.cdc.gov/epstein-barr/about-ebv.html (last visited 11/4/19).

788, 790 (10th Cir. 2006) (quoting *Hawkins*, 113 F.3d at 1164).  Generally, this means that the

"ALJ has the duty to . . . obtain [ ] pertinent, available medical records which come to his

attention during the course of the hearing."  *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir.

1996).  To warrant further investigation, there must be "some objective evidence in the record

suggesting the existence of a condition which could have a material impact on the disability

decision."  *Hawkins*, 113 F.3d at 1167.  If the claimant is represented by counsel, the ALJ

ordinarily may rely on counsel to identify any issues that require further development.  *Id.*  But if

"evidence in the record establishes the reasonable possibility of the existence of a disability and

the result of [a] consultative exam could reasonably be expected to be of material assistance in

resolving the issue of disability," the ALJ should investigate further or order a consultative exam.

*See id.* at 1169.  However, "it is not the ALJ's duty to be the claimant's advocate."  *Henrie v.*

*U.S. Dept. of Health and Human Serv.*, 13 F.3d 359, 361 (10th Cir. 1993) (citation omitted).

Ms. Rabache has not directed the Court to any objective evidence in the record

suggesting the existence of a condition which could have a material impact on the disability

decision.  Notably, there are no treatment records from Dr. Reddish.  Ms. Rabache did not

submit any pertinent, available medical records.  If any records exist, Ms. Rabache should have

ensured they were included in the record.  *See, e.g., Hardin v. Social Security Administration*,

2:13-cv-00124 KBM, Doc. 24 (in his reply, the claimant submitted treatment notes that were not

included in the record which established the record was clearly inadequate).  "As noted above,

the burden to prove disability in a social security case is on the claimant, and to meet this burden,

the claimant must furnish medical and other evidence of the existence of the disability." *Cainglit*

*v. Barnhart*, 85 F. App'x 71, 76–77 (10th Cir. 2003) (unpublished).  Ms. Rabache was

represented at the hearing by an attorney.  AR 27.  Ms. Rabache's attorney was familiar with the

record submitted to the ALJ. Indeed, the attorney specifically drew the ALJ's attention to the letter submitted by Dr. Reddish. AR 30–31. Counsel, however, "did not indicate or suggest to the ALJ that any medical records from [the doctor] were missing, nor ask for the ALJ's assistance in obtaining any such records." *Cainglit*, 85 F. App'x at 77. On appeal, Ms. Rabache has failed to identify the evidence that she claims the ALJ should have obtained. *Id*. Under the circumstances, the ALJ did not violate his duty to develop the record. *Id*. ("Given Ms. Cainglit's failure to provide the as-yet-unidentified records herself, to ask the Commissioner for assistance, or to show the relevance of any records she claims the ALJ should have obtained, we conclude she has not demonstrated the ALJ violated his duty to develop the record.").

The ALJ properly analyzed all of Ms. Rabache's treating physicians and did not fail in his duty to develop the record. The ALJ's decision was supported by substantial evidence.

    D.  <u>The ALJ Properly Assessed Ms. Rabache's Symptoms</u>.

Finally, Ms. Rabache contends that the ALJ failed to properly assess her symptoms pursuant to SSR 96-3P. Doc. 23 at 14–15.

> At step 2 of the sequential evaluation process, an impairment or combination of impairments is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.

SSR 96-3P, 1996 WL 374181, at *1 (July 2, 1996).[24] Ms. Rabache contends that the ALJ improperly found her giardia to be a non-severe impairment because she expressed to a doctor in February of 2006 that the treatment was "fantastic," and she felt results right away. Doc. 23 at

---

[24] Ms. Rabache is correct that SSR 96-3P was rescinded effective June 14, 2018, but it applies in this case because the ALJ's decision was made in June of 2017. *See* SSR 96-3P, 2018 WL 3461816, at *1; Doc. 23 at 14, n.9; AR 10.

14.  Ms. Rabache argues that giardia may continue to cause intestinal problems after the parasites are gone.  *Id.*  She also criticizes the ALJ for finding that her symptoms were not severe because of the limited medical evidence and treatment during the relevant time period.  *Id.*  While it may be true that giardia continues to cause problems after the parasites are gone, the limited medical evidence established that Ms. Rabache did not suffer symptoms from giardia that caused more than a minimal effect on her ability to perform basic work activates during the relevant time period.  Further, the ALJ did not deny Ms. Rabache's claim because of the "lack of treatment," as Ms. Rabache argues.  Doc. 23 at 15.  The fact is, the relevant time period is only two months.  There are only two pages of medical records that correspond with that time period.  It is not that Ms. Rabache did not seek treatment, but that the treatment she sought and impairments she suffered from during that time frame did not cause more than a minimal effect on her ability to perform basic work activities.  Remand is not warranted pursuant to SSR 96-3P.

## VI.    Conclusion

For the reasons stated above, I find the ALJ applied the correct legal standards and his decision is supported by substantial evidence.

IT IS THEREFORE ORDERED that Renee Rabache's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum (Doc. 23) is DENIED and the Commissioner's decision is AFFIRMED.

Laura Fashing
United States Magistrate Judge
Presiding by Consent